**Daniel NIX, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 76–1898.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 16, 1977.

Decided Feb. 28, 1978.

**1000**

Clay G. Guthridge, Third Year Law Student (Allan R. Holmes, Columbia, S. C., Legal Aid Service Agency, on brief), for appellant.

Thomas G. Wilson, Atty., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Mark W. Buyck, Jr., U. S. Atty., Columbia, S. C., Morton Hollander and Leonard Schaitman, Attys., Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., on brief), for appellee.

Before CRAVEN * and WIDENER, Circuit Judges, and COPENHAVER, District Judge.**

COPENHAVER, District Judge:

In April 1974, appellant Nix was incarcerated at the South Carolina Central Correctional Institution of Columbia. Nix alleges he was gassed and beaten by several of the institution's guards without provocation on his part. As a consequence of that incident, two letters written by four of Nix's fellow inmates were received by the Federal Bureau of Investigation (FBI), complaining of

---

* Although Judge Craven did not participate in the hearing on this case, it was agreed that he would listen to the tape and then participate in the decision. Judge Craven, however, died before the opinion was prepared.

** District Judge for the Southern District of West Virginia, Sitting by Designation.

the ill treatment afforded Nix. Subsequently, FBI agents interviewed some thirty persons, consisting of inmates, prison guards and a prison supervisory official. A statement was also obtained from a physician. The results of this investigation of the alleged violation of Nix's civil rights were brought to the attention of an assistant United States Attorney for the District of South Carolina, who deemed the case to be without prosecutive merit.

Nix brings this action pursuant to the Freedom of Information Act (hereinafter referred to as FOIA), 5 U.S.C. § 552, as amended.[1] He seeks the inmate letters, interview reports, and various other materials compiled by the FBI in the course of its investigation. This appeal is from an order of the district court dismissing appellant's complaint. We affirm save for one item of medical material refused Nix and the names of guards omitted from an FBI interview with inmate Isenock, who consented to release of his interview.

Prior to institution of this suit, Nix unsuccessfully sought to obtain these materials from the Civil Rights Division of the Department of Justice. After commencement of this action, Nix was furnished with the following materials, constituting but a minor portion of that which he requested:

1. A copy of the FBI's interview with Nix.

2. A half-page synopsis of the events leading to the FBI investigation.

3. A one-page statement concerning the civil action filed by Nix and another against several members of the South Carolina Department of Corrections.

4. Two one-page drawings of the cellblock area where Nix was confined.

5. A one-sentence statement that an assistant United States Attorney had found the alleged beating and gassing of Nix to be without prosecutive merit.

6. Four photographs of Nix depicting his injuries.

Various deletions were made from the material so furnished, including FBI file numbers, the names of the investigating or reporting FBI agents, identification numbers, some preprinted form language and the name of the assistant United States Attorney.[2]

Subsequently, Nix also received from the FBI a copy of the report of its interview with inmate Isenock. Nix had obtained Isenock's consent for this purpose and the FBI deemed the inmate's consent to be a waiver of his right to privacy. Deletions were made from the interview report, including the names of guards mentioned by Isenock.[3] In view of Isenock's consent, there is no justification for the deletion of

---

1. Section 552(a)(4)(B) provides as follows:

(B) On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

2. Deletions from the synopsis included identification numbers, the name of the reporting FBI agent, the title of the investigation, the characterization of the investigation, a statement of where one copy of the report was to be sent,

some pre-printed form language at the bottom of the paper, and the name of one of the "subjects" who had resigned due to the underlying threat. From the brief statement concerning the status of the civil action, the name of the investigating agent was deleted, as well as the FBI's file number of the investigation. From each of the drawings, the name of the FBI agent and the date of the drawing were deleted. Finally, from the one-sentence pronouncement of the decision of the assistant United States Attorney, there was deleted the name of the assistant and the file number of the investigation.

3. Other deletions consisted of the day and place of the interview, the investigation file number, the name of the agent interviewer, his typist's initials, the dictation date, and the pre-printed form language at the bottom of the page. These other deletions, all being made in keeping with this opinion, are deemed proper.

the names of the guards as given by him and whose names are also to be found in the released copy of the FBI's interview with Nix. Accordingly, the Isenock statement as released is to be issued anew with the names of the guards inserted as set forth in the interview report by the FBI agent.

At the direction of the court below, the FBI filed the disputed material with the court for an *in camera* inspection in keeping with the provisions of 5 U.S.C. § 552(a)(4)(B). Both the district court and this court have examined the disputed material which consists essentially of the following:

1. The two letters written by four inmates alerting the FBI to Nix's alleged ill treatment

2. Reports of interviews with guards who were suspects, inmates who were witnesses and a prison supervisory official

3. Report of a physician's statement

4. Names of third parties, such as FBI agents, prosecutors, witnesses and suspects

5. Reports obtained from sources within a non-federal law enforcement agency

6. Various internal procedural items such as the investigation title and file numbers, as well as items deemed cover letters.

Prior to the 1974 amendments to the Freedom of Information Act, virtually all of the material at issue here would have been deemed exempt simply on the ground that it constitutes part of the investigatory records compiled for law enforcement purposes by a criminal law enforcement authority in the course of a criminal investiga-

tion. *Center for National Policy Review on Race & Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974).

The 1974 amendments, which were enacted on November 21, 1974, and became effective February 19, 1975, narrowed and defined the exemptions from disclosure as now set out in the subsections to 5 U.S.C. § 552(b).[4]

▮ The Justice Department contends that the withheld material is exempt from disclosure by virtue of the provisions of various subsections of section 552(b): (2) (internal personnel rules and practices); (6) (personnel and medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy); (7)(C) (unwarranted invasion of personal privacy); and (7)(D) (confidential source identity and confidential information). In applying these exemption provisions, it would appear that Congress intended the courts to balance the public and private interests involved. The United States Supreme Court has so held in the course of employing the subsection (6) exemption. *Department of the Air Force v. Rose*, 425 U.S. 352, 372–73, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). This court has found the balancing test to be equally appropriate when construing subsection (7)(C). *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1136 n.7 (4th Cir. 1977). We find the balancing test applicable as well to subsections (2) and (7)(D).

▮ In employing the balancing test, we are mindful that FOIA exemptions are to be narrowly construed in accordance with the legislative purpose of Congress that disclosure rather than secrecy is the dominant objective of the Act. *Department of the Air Force v. Rose*, 425 U.S. at 360–61, 96 S.Ct. 1592. As we have recently observed,

4. Section 552(b) provides, in part:
   (b) This section does not apply to matters that are—

   .  .  .  .  .

   (2) related solely to the internal personnel rules and practices of an agency;

   .  .  .  .  .

   (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would .  .  . (C) constitute an unwarranted invasion of personal privacy, [or] (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, .  .  . confidential information furnished only by the confidential source .  .  . .

Congress, in enacting the 1974 FOIA amendments, was dissatisfied with the broad application given by the courts to exemption 7 of the original Act and with the limited extent to which the courts were allowing disclosure of investigatory files. *Charlotte-Mecklenburg Hospital Authority v. Perry,* 571 F.2d 195, No. 76–2272 (4th Cir. January 26, 1978). The FOIA exemptions, together with the balancing of private and public interests in keeping therewith, are to be construed and applied accordingly.

■ The record in this case indicates that Nix has also filed a civil rights suit in the same district court below on his own behalf and on behalf of an asserted class alleging mistreatment by the guards at the South Carolina Correctional Institution of Columbia. That suit concerns the same incident involved in the FBI investigation under consideration in this FOIA action as well as prison conditions generally. As this court observed in *Deering Milliken,* 548 F.2d at 1134–35, FOIA's purpose is to inform the public about the action of government agencies. It was not designed to supplement the rules of civil discovery. Thus, the right of Nix to obtain information is neither enhanced nor diminished because of his needs as a litigant, but is to be measured by the right of the public to obtain the same information.

## I. The Inmate Letters and FBI Interviews (Excluding Physician's Statement)

■ Although the four inmates did sign their names to the two letters to the FBI, the accusations of impropriety contained in the letters are of such a nature that individuals in the vulnerable position of these informers, facing potential reprisal from the very prison guards and prison officials against whom they complain, would hardly have made the charges unless they were confident that their identities would remain concealed. In applying the confidentiality exemption of subsection (7)(D), it is enough to show that the information was furnished under circumstances from which an assurance of confidentiality could be reasonably inferred.[5] *Deering Milliken,* 548 F.2d at 1137.

■ At the time the letters were written in May 1974, being prior to the 1974 FOIA amendments, the state of the law was such that investigatory files compiled for law enforcement purposes were deemed exempt from disclosure.[6] Although questions of confidentiality as well as privacy are to be determined in accordance with the present language of the statute, the district court properly considered the law applicable at the time the letters were written in determining the confidential nature of these communications. In view of the peril of reprisal confronting the inmate-informers and the state of the law as it existed when their letters were transmitted to the FBI, the finding by the court below that the letters were written and received under an implied assurance of confidentiality is amply supported by the record. Consequently,

---

5. The joint explanatory statement of the House and Senate conferees respecting the 1974 amendments to FOIA contains the following:

   The conference substitute follows the Senate amendment except for the substitution of 'confidential source' for 'informer' . . . .

   .    .    .    .    .    .

   The substitution of the term 'confidential source' in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement

purposes—either civil or criminal in nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information. However, where the records are compiled by a *criminal* law enforcement authority, *all* of the information furnished only by a confidential source may be withheld if the information was compiled in the course of a criminal investigation. *Conf.Rep. No.* 1200, 93rd Cong., 2d Sess. *reprinted in* [1974] *U.S.Code Cong. & Admin. News,* pp. 6285, 6291 (emphasis in the original).

6. *E.g., Center for National Policy Review on Race & Urban Issues v. Weinberger,* 163 U.S. App.D.C. 368, 502 F.2d 370 (1974).

the identity of each of the inmate authors is protected from disclosure by subsection (7)(D). This does not, we hasten to add, suggest that, had the inmate-informers written their letters after the effective date of the 1974 FOIA amendments, they would not be protected. Rather, we undertake now to pass only on those questions presented by the circumstances of the case before us.

For essentially the same reasons, the FBI interviews with the guards, inmates and a prison supervisory official are exempt as having been given under an implied assurance of confidentiality, as found by the court below. The interviews were conducted at a time prior to the 1974 FOIA amendments when it was reasonable for the interviewees to understand that investigatory files compiled for law enforcement purposes were exempt from disclosure. Further, inasmuch as a number of the guards were themselves the focus of the investigation, the prospect of reprisal of guard against inmate and even inmate against guard becomes an entirely realistic one. As found by the court below, the prison altercation being investigated was one between a prisoner and prison guards and in such a situation natural resentment would be high with a definite potential for creating conflicts and jeopardizing the personal well-being of the prisoners and guards alike. Moreover, it is not without significance that, of the some thirty guards and inmates other than Nix interviewed by the FBI, only Isenock has seen fit to consent to the release of his interview. Accordingly, the district court's finding of an implied assurance of confidentiality to the guards, inmates and the prison supervisory official interviewed by the FBI is readily supported by the record in the case and by this court's own *in camera* inspection. Thus, the identity of the guard, inmate and prison supervisory official interviewees is free from disclosure under the confidential source exemption of subsection (7)(D).

█ The second phase of subsection (7)(D) also serves to protect, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, "confidential information furnished only by the confidential source." As already noted, the joint explanatory statement of the House and Senate conferees states that "*all* of the information furnished only by a confidential source may be withheld . . . ." (emphasis in original).[7] The (7)(D) exemption is plainly designed to remove impediments to investigation by assuring confidential sources that not only will their identities be retained in confidence save for the proper exercise of the power of subpoena but so, too, will the information itself when obtained only from confidential sources. We find that the exemption is intended to protect all such confidential information when furnished only by a confidential source, whether one or more.

█ This suggests in turn that such information is not protected under the second phase of subsection (7)(D) unless it is furnished "only" by confidential sources. It is apparent from a review of the record in this case that the information released by the FBI, especially the FBI's interviews with Nix and inmate Isenock, contains some of the same revelations as are to be found in the inmate letters and FBI interviews with other inmates, guards and the prison supervisory official. To that extent, the information which the FBI declines to disclose stems from nonconfidential sources, namely, Nix and Isenock.

Nevertheless, we conclude that no part of the inmate letters and FBI interviews with other inmates, guards and the prison supervisory official is subject to disclosure. Although it is by no means clear that revelation of the parts of these inmate letters and other interviews corresponding to the Nix and Isenock versions would reveal the identity of the authors or interviewees, there is a substantial risk that their identities would thereby become ascertainable. This risk becomes more apparent when it is recognized that the focus of one's attention in this

prison setting is naturally drawn and narrowed at the outset to those inmates who were in Nix's cellblock area and to those guards who went on duty at the time of the event under investigation. Inasmuch as the nonconfidential portion of the information involved has already surfaced and become available for public consumption, and in view of the risk of disclosure of the identity of the confidential sources by revelation of any significant portion of the withheld inmate letters and interviews, a balancing of the private and public interests involved compels the conclusion that the undisclosed inmate letters and interviews in their entirety be deemed exempt under subsection (7)(D). Any other result would jeopardize the opportunity of federal law enforcement agencies to obtain similar information in future cases and, as a consequence, law enforcement at the federal level would needlessly suffer without any compensating benefit.

Inasmuch as the withheld inmate letters and interviews are found wholly exempt under subsection (7)(D), it becomes unnecessary to consider whether their disclosure is also exempt under subsection (7)(C) protecting unwarranted invasion of personal privacy.

## II. Reports from Non-Federal Law Enforcement Sources

■ The FBI has obtained certain records provided by sources within a non-federal law enforcement organization. The FBI insists that these records were supplied to it in confidence, that such records are not generally available to the public, that they were obtained by FBI agents for official purposes and contain criminal records of individuals as well as candid remarks and observations of non-FBI law enforcement officials, and that release of this information would seriously inhibit the FBI's relationship with its confidential sources and with other law enforcement personnel. We agree with the court below that these materials were obtained in confidence and are fully protected by subsection (7)(D). *Church of Scientology of California v. United States Department of Justice*, 410 F.Supp. 1297 (C.D.Cal.1976).

## III. Internal Practices

■ We next take up those miscellaneous materials which include file numbers, routing stamps, cover letters and secretary initials. The district court denied release of these materials pursuant to subsection (2) which protects from disclosure matters related solely to the internal personnel rules and practices of an agency. 5 U.S.C. § 552(b)(2) (1970).

Merely how the FBI routes and labels its investigations, to whom its agents send reports of the investigations, and who does the typing of the reports are ordinarily not of such genuine and significant public interest as to require FOIA disclosure. In this instance, these items are at most routine matters of mere internal significance and, as such, are protected from disclosure by subsection (2). *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977).

Nix further contends that other material is being withheld merely because notations of file numbers, routing stamps, secretary initials and the like are to be found on documents to which he is otherwise entitled. Our *in camera* inspection of all these materials satisfies us that such is simply not the case. Rather, the FBI has undertaken here to comply with the requirement of 5 U.S.C. § 552(b) that "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

## IV. Identity of FBI Agents and Assistant United States Attorney

■ The FBI also seeks to maintain the secrecy of the identity of the FBI agents who conducted the interviews. Nondisclosure is sought under subsection (7)(C) on the ground that identification of the FBI agents would constitute an unwarranted invasion of their personal privacy. It is contended by Nix, however, that public officials and employees are not entitled to shield their identities from public disclosure

in those matters in which they are acting in their official capacities.

One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.[8] While the right of privacy to these FBI agents is perhaps minimal, we find that the public interest in the identification of the FBI agents who conducted the investigation of the alleged civil rights violation of Nix to be even less. For the same reason, the assistant United States Attorney who made the decision that appellant's alleged civil rights violation was without prosecutive merit is also entitled to have his identity remain undisclosed as being an unwarranted invasion of personal privacy under subsection (7)(C). It is enough that the identity is known of the United States Attorney in charge of the Columbia, South Carolina, office in which the assistant who made the decision is employed.

The court recognizes that, in a matter arousing greater public interest, nondisclosure of these officials' identity might be overborne by the legitimate interest of the public. *See Deering Milliken*, 548 F.2d at 1136–37. This is not such a case.

### V. Physician's Statement

██ The last of the withheld information which Nix seeks concerns the investigation made by the FBI into his physical condition and the medical treatment administered to him. The FBI obtained the statement of a physician which the court below deemed exempt by virtue of subsection (6), protecting "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The medical record in question here, however, is that of the very individual who seeks its disclosure. Thus,

there is no invasion of his privacy, and subsection (6) is inapplicable.

The FBI insists that release of this statement might subject the medical personnel named therein to claims that improper medical treatment was delivered and, perhaps, to harassment by civil suits. For reasons similar to those assigned with respect to the propriety of withholding the names of the investigating FBI agents, it is concluded that the name of the reporting physician, as well as that of the medical technician and the other doctor mentioned in the statement, may in this instance be deleted pursuant to subsection (7)(C) which exempts disclosure constituting an unwarranted invasion of personal privacy. We find no significant public interest in the identity of the attending medical personnel, particularly when balanced against their interest in avoiding harassment or other embarrassment which release of their identities may well precipitate.

Accordingly, the substantive content of the statement by the physician must be released, with deletions therefrom being made in keeping with this opinion.

### VI. Attorney's Fees

██ FOIA provides for an award of attorney's fees to a complainant who has substantially prevailed, 5 U.S.C. § 552(a)(4)(E):

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

It cannot be said that Nix has substantially prevailed. The only fresh information of consequence obtained by him as a result of this suit consists of the photographs of his injuries and a half-page physician's statement of the treatment of those injuries. It is significant to note that a member of the public other than Nix would likely have been denied access to both the photographs and the physician's statement by virtue of

---

8. The FBI does not urge, nor does this court find, that such harassment and annoyance rises to the level that the life or physical safety of

any of these law enforcement personnel is in danger. *See* 5 U.S.C. § 552(b)(7)(F). *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977).

the privacy exemptions contained in subsections (6) and (7)(C), absent consent from Nix. Similarly, the Nix and Isenock statements became available only by virtue of their consent. Thus, the FOIA request alone has yielded virtually nothing beyond the FBI half-page synopsis of the events leading to the investigation and the pronouncement that an assistant United States Attorney found the case to be without prosecutive merit.

Even if all of the rather limited amount of material derived by Nix were deemed sufficient to qualify him as substantially prevailing, Nix must nevertheless be denied recovery of attorney's fees. The United States Court of Appeals for the District of Columbia Circuit has extensively reviewed the legislative history of FOIA's attorney's fees provisions and the factors a district court should use in exercising its discretion in awarding such fees. *Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. 83, 559 F.2d 704 (1977), and *Cuneo v. Rumsfeld*, 180 U.S. App.D.C. 184, 553 F.2d 1360 (1977). This court agrees with the District of Columbia Circuit that an award of attorney's fees is not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA. In this case, Nix has failed to show benefit to the public by his action. On the contrary, Nix brought this suit to benefit himself by supplementing the discovery procedure in his civil rights action currently pending in the district court. Further, the government's withholding of the records in this case has been founded largely on a reasonable basis in law. Under these circumstances, this court cannot say that the district court abused its discretion in denying Nix his attorney's fees and litigation costs.

### VII.

On remand, the district court shall enter an appropriate order releasing the material referred to in this opinion.

*AFFIRMED AS MODIFIED AND REMANDED.*