995 F.2d 916
 72 A.F.T.R.2d 93-5139
 CHURCH OF SCIENTOLOGY INTERNATIONAL, Plaintiff-Appellee,
v.
UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellant.
CHURCH OF SCIENTOLOGY INTL., Plaintiff-Appellee,
v.
UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellant.
CHURCH OF SCIENTOLOGY, Plaintiff-Appellee,
v.
UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellant.
 Nos. 92-55817, 92-55828 and 92-55831.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1993.
Decided June 9, 1993.
 
 Jonathan S. Cohen, Gary R. Allen, Murray S. Horwitz, Asst. Attys. Gen., Washington, DC, for defendant-appellant.
 Kendrick L. Moxon, Bowles & Moxon, Hollywood, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: HALL, WIGGINS, TROTT, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 This case is a consolidation of three cases arising in the Central District of California. In each case, the Church of Scientology International ("Church") requested that the Exempt Organization division ("EO") of the Internal Revenue Service ("IRS") disclose certain documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). The IRS responded to each request by disclosing some documents and claiming that others were exempt from disclosure under 5 U.S.C. § 552(b). The Church challenged the IRS's exemption claims in district court, and the district court ordered the disclosure of hundreds of documents claimed to be exempt. The IRS appeals. The district court had jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We reverse in part, vacate in part, and remand.
 
 FACTS
 
 2
 This case deals with three separate requests by the Church for documents under the FOIA. The facts surrounding each request are summarized below.
 
 Request No. 1
 
 3
 On August 17, 1988, the Church submitted a FOIA request, seeking access to information about the Church and related entities Religious Technology Center ("RTC") and Church of Spiritual Technology ("CST") located in the Los Angeles Exempt Organization office from 1986 to "the present." By letter dated August 30, 1988, the IRS advised the Church that the request could not be processed because the Church had not submitted a valid taxpayer authorization for release of tax return information. On September 9, 1988, the Church responded, supplying releases for itself, RTC, and CST. A month later, the IRS informed the Church that its request had been sent to the National Office of Exempt Organizations in Washington, D.C., for processing. Thereafter, the Church modified its request to include information contained in the national office.
 
 
 4
 On April 17 and 20, 1989, the Church received form letter responses from the IRS, indicating that some or all of the records requested would not be released. The Church filed an administrative appeal from the IRS's decision to withhold documents, but never received a response to its appeal from the IRS. After the statutory time for the IRS to answer had passed, the Church filed an action in the district court.
 
 
 5
 The IRS disclosed 79 documents in full pursuant to the request. The IRS also identified 16,000 other documents as responsive to the request, but took the position that these documents were exempt from disclosure. On a motion for summary judgment, the district court ordered the release of all documents for which the IRS claimed an exemption under 5 U.S.C. § 552(b)(7) because the documents were not compiled for law enforcement purposes.
 
 Requests Nos. 2 and 3
 
 6
 On September 16, 1990, the Church submitted a FOIA request for "a copy of all files ... relating to or concerning [the Church], maintained in a locked three drawer file cabinet under the control of Roderick Darling." In another letter of the same date, the Church also requested "all files, records, documents, [and] notes ... relating to [the Church] maintained or temporarily residing in the office of Marvin Friedlander."
 
 
 7
 The IRS disclosed an unspecified number of documents pursuant to these requests. As before, the IRS claimed that other responsive documents were exempt from disclosure--the IRS withheld 219 pages of documents pursuant to the request made of Darling and 330 pages of documents pursuant to the request made of Friedlander. After the time had run for the IRS to respond to the Church's requests, the Church filed actions in the district court.
 
 
 8
 In both cases, the district court ruled that the EO had no law enforcement purpose and ordered the release of any documents compiled in connection with the Church's application for tax exempt status. The district court determined that the EO had no law enforcement function and that therefore the documents were not compiled for law enforcement purposes.
 
 
 9
 The court also ordered the IRS to produce documents containing the handwriting of seven named agents. The IRS had claimed that the documents were exempt under 5 U.S.C. § 552(b)(7)(C). The court concluded that the IRS could not withhold these records on privacy grounds because the individuals had indicated that they did not object to the Church having documents containing their handwriting. The IRS appeals.
 
 STANDARD OF REVIEW
 
 10
 Our review of a judgment or order under the FOIA is a two-part inquiry. First, we must determine whether the district court had an adequate factual basis for its decision. Bowen v. FDA, 925 F.2d 1225, 1226-27 (9th Cir.1991); Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 742 (9th Cir.1979). If an adequate factual basis supports the district court's decision, we should review the decision under the clearly erroneous standard. Bowen, 925 F.2d at 1227; Church, 611 F.2d at 742.
 
 DISCUSSION
 
 11
 The FOIA embodies a strong federal policy in favor of full agency disclosure of government documents. See John Doe Agency v. John Doe Corp., 493 U.S. 146, 151-52, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989); Bowen, 925 F.2d at 1226. Any inquiry under the Act, then, begins with a "strong presumption in favor of disclosure." United States Dep't of State v. Ray, --- U.S. ----, ----, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991). Thus, while there are specific exemptions from disclosure set forth in the Act, these exemptions are limited and must be narrowly construed with doubts resolved in favor of disclosure. John Doe, 493 U.S. at 152, 110 S.Ct. at 475; Federal Labor Relations Authority v. United States Dep't of the Navy, 958 F.2d 1490, 1494 (9th Cir.1992). The agency bears the burden of showing that requested documents are exempt from disclosure. John Doe, 493 U.S. at 152, 110 S.Ct. at 475; Federal Labor Relations Authority, 958 F.2d at 1494; Bowen, 925 F.2d at 1226; Lewis v. IRS, 823 F.2d 375, 378 (9th Cir.1987).
 
 
 12
 I. Exemption 7--"compiled for law enforcement purposes"
 
 
 13
 Section 552(b)(7) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that" disclosure will result in one of six enumerated harms. In determining whether exemption 7 applies, we must first decide whether the records requested by the Church were "compiled for law enforcement purposes."
 
 
 14
 This court has indicated that this determination requires "an examination of the agency itself to determine whether the agency may exercise a law enforcement function." Church, 611 F.2d at 748. The district court concluded that the EO has no law enforcement function and ruled, therefore, that the requested documents were not compiled for law enforcement purposes. We disagree.
 
 
 15
 This court has clearly held that the IRS has the "requisite law enforcement mandate" to qualify as a law enforcement agency. Lewis, 823 F.2d at 379. Moreover, we are convinced that the EO performs a law enforcement function by enforcing the provisions of the federal tax code that relate to qualification for tax exempt status. This conclusion is consistent with Lewis and bolstered by the decision of the D.C. Circuit in Center for Nat'l Policy Review on Race & Urban Issues v. Weinberger, 502 F.2d 370 (D.C.Cir.1974).[1] The Weinberger court "endorsed the view propounded in the legislative history that civil as well as criminal law enforcement activities are within the purview of the exemption." Id. at 373 (footnote omitted). The court stated:
 
 
 16
 While an administrative determination of ineligibility for [a] governmental benefit is not attended by the same safeguards and procedures as a judicial determination in a criminal or civil proceeding, it is a governmental action that must be accompanied by due procedure. We think it has the salient characteristics of "law enforcement" contemplated by the wording of exemption 7....
 
 
 17
 ... Where an agency, like HEW, has both voluntary compliance and formal determination functions ... the pertinent files are "compiled for law enforcement purposes."
 
 
 18
 Id. (footnote omitted).
 
 
 19
 The EO, like the agency in Weinberger, performs both voluntary compliance and formal determination functions. Moreover, the EO's role in determining eligibility for the governmental benefit of tax exempt status also "has the salient characteristics of law enforcement." See id. Thus, we find the reasoning of Weinberger persuasive and its application appropriate here. We hold that Lewis and Weinberger compel the conclusion that the EO has the requisite law enforcement function for purposes of the statute.[2] Accordingly, the district court's conclusion that the EO has no law enforcement purpose is clearly erroneous, and we reverse its order that the IRS disclose all documents or portions of documents protected only by an exemption 7 claim or compiled in connection with an application for tax exempt status. We instruct the district court to determine whether the particular documents withheld were compiled for law enforcement purposes[3] and whether the government can establish that disclosure of the documents threatens one of the harms specified in 5 U.S.C. § 552(b)(7)(A-F).
 
 II. Applicability of Exemption 7(C)
 
 20
 The IRS also contends that the district court erred when it ordered the production of documents containing the handwriting of various IRS agents. The IRS claims that the documents are exempt from disclosure under 5 U.S.C. § 552(b)(7)(C).
 
 
 21
 Section 552(b)(7)(C) "permits the government to withhold documents and portions of documents 'compiled for law enforcement purposes, but only to the extent that the production of such records would ... constitute an unwarranted invasion of personal privacy.' " Wiener v. FBI, 943 F.2d 972, 983-84 (9th Cir.1991) (quoting 5 U.S.C. § 552(b)(7)(C) (1988)), cert. denied, --- U.S. ----, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992). To determine whether production of a particular document would constitute an unwarranted invasion of personal privacy, a court must determine whether the public interest in disclosure outweighs the individual privacy interests that would suffer from disclosure. See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762, 776, 109 S.Ct. 1468, 1476, 1483, 103 L.Ed.2d 774 (1989); Wiener, 943 F.2d at 984.
 
 
 22
 The district court concluded that all documents compiled for law enforcement purposes and containing the handwriting of IRS agents should be exempt from disclosure because there existed "little public interest" in the disclosure of employee handwriting; the history of antagonism between the parties justified protection of IRS employee identities; and the IRS had no duty to alter information so as to make it discloseable.[4]
 
 
 23
 Nonetheless, the court ordered the disclosure of any documents withheld under exemption 7(C) that contained the handwriting of seven named agents who had indicated in depositions that they did not object to the Church having samples of their handwriting. The court concluded that the "IRS cannot assert an unwarranted invasion of privacy on behalf of individual employees who have no objection to the disclosure of their handwriting." The court acknowledged that the named employees might have claimed a privacy interest "if they knew exactly what information would be revealed" but ordered the documents released because the IRS objected only to the release of the agents' handwriting and not the information in the documents. We conclude that the district court erred by failing properly to determine whether the public interest in disclosure outweighed privacy concerns.
 
 
 24
 First, we note that courts have long frowned upon the release of government compiled documents by individual consent. See Rural Housing Alliance v. United States Dep't of Agric., 498 F.2d 73, 82-83, opinion supplemented by 511 F.2d 1347 (D.C.Cir.1974). Second, we find the agents' alleged waivers of their privacy interests insufficient to compel disclosure. The agents did not consent to the release of any specific documents or set of documents. Instead, they simply indicated that they did not object to the Church having documents containing their handwriting in the abstract. Given our reluctance to compel the disclosure of government compiled documents on the basis of individual consent, we find the agents' deposition testimony alone an inadequate factual basis on which to conclude that the public interest in disclosure outweighed the privacy interests. The agents' testimony may indicate that the privacy concerns here are not particularly weighty, but it does not relieve the court of its duty to balance the interests. See Reporters Comm., 489 U.S. at 762, 776, 109 S.Ct. at 1476, 1483.
 
 
 25
 Finally, the district court failed to address the public interest in disclosure of the documents containing the handwriting of the seven named agents. Moreover, the court did not indicate the nature of any of the documents so as to permit us to evaluate the public interest in disclosure. Thus, it is impossible for us to determine whether the public interest outweighs the privacy concerns in this case as the law requires. See Reporters Comm., 489 U.S. at 762, 776, 109 S.Ct. at 1476, 1483; Wiener, 943 F.2d at 984; see also Nix v. United States, 572 F.2d 998, 1006 (4th Cir.1978) (holding that certain documents were exempt from disclosure even though the privacy rights implicated were minimal because the public interest in disclosure was even less). This court has indicated that a " 'reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document[s].' " Wiener, 943 F.2d at 988 (citation omitted). However, that is exactly what we are being asked to do in this case. Accordingly, we vacate the district court's order to disclose the documents containing the handwriting of the seven named agents and remand this matter with the instruction that the court apply the balancing test outlined above to the specific documents ordered produced.[5] Only then will this court be able properly to review the district court's decision.
 
 III. Page 427
 
 26
 The IRS's final claim of error involves the district court's ruling that page 427 was not exempt from disclosure under the attorney-client privilege contained in exemption 5. The IRS suggests, and the Church agrees, that this order is not presently appealable because the court did not order production of the document. The court simply ruled in conjunction with deciding the motion for summary judgment that the document was not exempt from disclosure under exemption 5. This court's decision in In re Steele, 799 F.2d 461, 464-65 (9th Cir.1986), supports the parties' conclusion that the order is not appealable. The Steele court held that a final decision in a FOIA case consists of " 'an order by the District Court requiring release of documents by the Government to the plaintiff, or order denying the plaintiff's right to such release.' " Id. at 464 (quoting Green v. Dep't of Commerce, 618 F.2d 836, 841 (D.C.Cir.1980)). Because the district court never ordered the government to produce page 427, we conclude that there is no final appealable order as required for this court to exercise jurisdiction under 28 U.S.C. § 1291.
 
 
 27
 REVERSED in part, VACATED in part, and REMANDED.
 
 
 
 [1]
 Weinberger was decided under an earlier version of the statute that we consider here. We recognize that amendments to the statute have superceded portions of the Weinberger case. See Local 30, United Slate, Tile, and Composition Roofers v. NLRB, 408 F.Supp. 520, 524 & n. 1 (E.D.Pa.1976). However, no amendments to the statute have affected the portion of the opinion construing the phrase "law enforcement purpose", which we find persuasive here
 
 
 [2]
 The Church would have us distinguish Lewis because it involved a document request from the IRS's criminal investigation division, a division whose law enforcement mandate is more obvious than that of the EO. We have considered the distinction and expressly reject it on the strength of Weinberger's rationale
 
 
 [3]
 We point out that the documents need not have been gathered originally for law enforcement purposes. The government must show only that the records and information had been compiled for law enforcement purposes "when the response to the FOIA request [was] made." John Doe, 493 U.S. at 155, 110 S.Ct. at 477; see also id. at 155 n. 6, 110 S.Ct. at 477 n. 6 (suggesting that an agency cannot compile records for law enforcement purposes so as to avoid disclosure). Thus with regard to the IRS's argument that the documents were incorporated into Church audit files, the district court must determine whether the government has borne its burden of establishing a compilation for law enforcement purposes. Id
 
 
 [4]
 The Church offered to pay to have the withheld documents typed so as to eliminate the risk of discovering agent identities through handwriting
 
 
 [5]
 We note that the district court need not apply the balancing test to each specific document if the court determines that the documents can be considered "categorically" rather than on an ad hoc basis. See Reporters Comm., 489 U.S. at 776-79, 109 S.Ct. at 1483-85