Alton COLEMAN, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.

No. Civ.A. 95–1616(RCL).

United States District Court, District of Columbia.

July 31, 1998.

See also, 972 F.Supp. 5.

Dale A. Baich, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Arizona, Phoenix, AZ, for Plaintiff.

Wilma A. Lewis, United States Attorney, Anthony M. Lexis, Assistant United States Attorney, Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendants' Motion for Summary Judgment pursuant to rule 56 of the Federal Rules of Civil Procedure, plaintiff's opposition thereto, and defendants' reply. Plaintiff Alton Coleman seeks release of numerous documents by the defendants United States Department of Justice and Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Coleman has formally requested all FBI documents that pertain to him. The FBI has refused to comply with the request in its entirety and instead has claimed enumerated exemptions under FOIA. Upon consideration of the submissions of the parties, defendants' Motion for Summary Judgment is hereby granted.

## I. FACTUAL BACKGROUND

On December 27, 1988, Coleman presented the FBI with a FOIA request for release of all documents and information pertaining to him. Coleman hoped to receive these documents on an accelerated basis as he is awaiting four death sentences. Moran Decl. ¶¶ 15–18. Because of the sheer quantity of documents the search uncovered, the FBI requested that Coleman narrow the scope of his search to items of more immediate interest, permitting the FBI to expeditiously process the request. Coleman voluntarily agreed and the FBI released 77 of the 318 documents responsive to his request. After the FBI conducted further Vaughn[1] indexing as ordered by the court, the court held that defendants satisfied their burden of proof for withholding pertinent documents pursuant to enumerated exceptions under FOIA and the court granted summary judgment. See Coleman v. FBI, No. 89–2773, 1991 WL 333709 (D.D.C.1991) aff'd, No. 92–5040, 1992 WL 373976 (D.C.Cir. Dec.4, 1992) (hereinafter "Coleman II").

On July 17, 1989, Coleman requested the remaining documents that fell beyond the scope of his amended initial request. Over a period of time, the FBI released voluminous documents, redacted some information, and withheld certain documents in their entirety pursuant to FOIA exceptions (b)(1); (b)(2); (b)(3); (b)(6); (b)(7)(C); (b)(7)(D); and (b)(7)(E). 5 U.S.C. § 552(b)(1), (2), (3), (6), (7)(C), (7)(D), and (7)(E). Coleman properly exhausted his administrative appeals and accordingly brought this action under FOIA § 552(a)(4)(B) to compel release of the redacted and withheld information.

Consequently, the FBI filed a Vaughn index, accompanied by the declarations of Robert Moran and Richard D. Davidson[2] (collectively, the "Vaughn Index"), addressing the 16,192 pages[3] responsive to Coleman's subsequent document request. Included in the Vaughn Index is a description of correspondence between Coleman and defendants (Moran Decl. ¶ 6), an explanation of the records and surveillance systems (id. ¶¶ 7–12), identification of the requested information (id. ¶¶ 13–48), results of the review of responsive documents pursuant to the Landano[4] decision (id. ¶¶ 49–51), the format utilized for justification of deleted material (id. ¶¶ 53–58), the exemptions asserted and the justifications for those exemptions (id. ¶¶ 53–116), and copies of the responsive documents, or where the entire document was withheld, a "Deleted Page Sheet" indicating omission of responsive documents and the basis for that omission (Vaughn Index exhibit 4).

The court required Coleman to submit a list of the withheld or redacted information he intended to challenge. Order of Sept. 9, 1996. Coleman complied and defendants then filed the instant summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. In response, plaintiff moved for further Vaughn indexing and a more specific Vaughn affidavit. On July 31, 1997, this court ordered the FBI to submit a more specific Vaughn index with regard to

---

1. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973).

2. Moran and Davidson are the FBI Agents who processed Coleman's FOIA requests.

3. Of the 16,192 pages responsive to Coleman's request, 4520 were duplicates.

4. *Department of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

enumerated documents inadequately described in the Deleted Page Sheets, thereby granting in part and denying in part plaintiff's motion. *Coleman v. FBI*, 972 F.Supp. 5 (D.D.C.1997) (hereinafter "Coleman III"). Specifically, the court required that the FBI identify each individual document, the applicable FOIA exemption, and the reason that the FOIA exemption applies.[5] The court emphasized the relative importance of substance over form in facilitating *de novo* review of the agency decision to withhold certain documents.

The FBI complied with the order on September 2, 1997 by submitting supplemental Deleted Page Sheets for each document, identifying the relevant exemption and its application. Furthermore, the FBI filed a declaration of Bobbie S. Olivarri and two supplemental exhibits on January 14, 1998 which disclose additional information in response to Coleman's opposition to summary judgment.[6] However, this information was still inadequate to facilitate *de novo* review. On July 13, 1998 this court ordered the defendants to submit certain documents for *in camera* inspection. Order of July 13, 1998. The FBI submitted the requested documents on July 24, 1998 and this court has since completed the *in camera* inspection.

## II. ANALYSIS

### A. Introduction

The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom of Information Reform Act of 1986, §§ 1801–04 of Pub.L. No. 99–570, 100 Stat. 3207, 3207–48 (1986) establishes a statutory right for citizens to gain access to government information. First enacted in 1966, the Act creates a basic presumption that agency records should be accessible to the public and commands government agencies to make records available upon demand unless the request falls within one of the nine exemptions. As defendants justify nondisclosure on three of the nine exemptions,[7] the court will discuss the contested documents by exemption group rather than individually and assess whether defendants have properly invoked each exemption.

■■■■ In FOIA suits, the standard of review is *de novo*. However, the defendant agency withholding requested information bears the burden of justifying its decision. *See, e.g.,* 5 U.S.C. § 552(a)(4)(B); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C.Cir.1988) As discussed below, the court concludes that the FBI has met its burden to withhold this information from Coleman.

### B. Exemption 2

■■■■ The FBI asserts Exemption 2 to protect source symbols and file numbers as well as other records that might disclose FBI techniques and procedures. 5 U.S.C. § 552(b)(2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." In *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the plaintiff filed an FOIA request to obtain case summaries of the Air Force Academy's ethics hearings. The court interpreted Exemption 2's language as protecting internal agency matters so routine or trivial that they could not be the subject of a genuine and significant public interest. *Id.* at 369, 96 S.Ct. 1592.

Courts have further interpreted Exemption 2 to include two different categories. *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C.Cir.1992). The first of those categories, "Low 2" exemptions, is trivial administrative data such as file numbers, mail routing stamps, initials, data processing notations, and other administrative markings which may be withheld under Exemption 2. *See*

---

5. These standards were clearly set forth in Coleman I, where the court addressed a similar issue between these two parties. *Coleman v. FBI*, No. 89–2773, mem. op. (D.D.C. April 3, 1991).

6. Within his opposition, Coleman does not contest the FBI's assertion of exemption (b)(1) which is independently addressed in Richard D. Davidson's declaration. Furthermore, he does not contest the FBI's assertion of exemption (b)(3). Therefore, it is unnecessary to discuss either exemption.

7. These three exemptions do not include subsections (C), (D), and (E), which are each an enumerated harm within exemption seven.

*Lesar v. Department of Justice,* 636 F.2d 472 (D.C.Cir.1980) (informant codes held a matter of internal significance in which the public has no substantial interest [and which] bear no relation to the substantive contents of the records released). *See, e.g., Branch v. FBI,* 658 F.Supp. 204 (D.D.C.1987) ("There is no question that [source symbol and file numbers are] trivial and may be withheld as a matter of law under Exemption 2."). The second category, "high 2" exemptions, involves predominately internal documents the disclosure of which would likely circumvent agency regulations and statutes. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981).

Defendants have asserted Exemption 2 to protect source symbols and file numbers and consider this exemption a "high 2" matter. *See* Defendants' Motion for Summary Judgment at 7. Coleman does not address source symbols and file numbers in his Opposition. The court agrees that the source symbols and file numbers are exempt.

Coleman cannot have any possible legitimate interest in the FBI's source symbols and file numbers, especially where they do not relate to any substantive content requested by him. This information clearly qualifies for a "low 2" exemption. The primary function of these numbers is to organize a filing system without using the name of the individuals within the files. Therefore, this information facilitates administrative operation and recordkeeping, neither of which aid Coleman in his case.

Because these symbols and numbers shelter from identification confidential informants who relay information to the FBI on a regular basis, it is reasonable, *arguendo,* to assert a "high 2" exemption. Disclosing this filing system could potentially reveal a sequence of information including the dates, times, and identities of numerous informant transactions thereby exposing the depth of the FBI's informant coverage. This would allow criminals to redirect their activities and

avoid legal intervention, thereby satisfying the "high 2" exemption threshold. Therefore, the source symbols and file numbers were properly withheld by the FBI.

Moreover, the Bureau invoked Exemption 2 in conjunction with 5 U.S.C. § 552(b)(7)(E) to withhold other records that would disclose techniques and procedures, allowing criminals to thwart investigations. These exemptions are fully discussed under exemption 7(e). *See Infra* II E.

## C. Exemption 7(C)

■ In this case, the FBI asserts exemption 7(C)[8] to protect the identities of FBI agents, investigative and support personnel, other federal government employees, parties of investigative interest to the FBI, interviewed third parties, non-federal law enforcement officials, third parties mentioned in an investigative context, commercial and state or local employees who cooperated with investigations, and autopsy records and photographs of victims. Moran Dec. ¶¶ 72–86. 5 U.S.C. § 552(b)(7)(C), as amended by Pub.L. No. 99–570, 1802 (1986), exempts information that could reasonably be expected to constitute an unwarranted invasion of personal privacy. These are the very withholdings exemption 7(C) is designed to protect absent some significantly compelling countervailing public interest in disclosure.

In *Nix v. United States,* 572 F.2d 998 (4th Cir.1978) the court stated:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Id.* at 1006. The names of FBI Agents, and other government personnel clearly fall within this exemption. To hold otherwise would

---

**8.** Coleman discusses exemption 6 in conjunction with defendants' invocation of exemption 7(C), but fails to address any precise argument regarding this exemption. Defendants do not squarely address exemption 6 in their Motion for Summary Judgment or in any of their declarations.

Because of the similarity between exemption 6 and exemption 7(C), as well as the fact that exemption 6 is not a part of the Summary Judgment motion under consideration, it is not necessary to specifically discuss exemption 6, notwithstanding its overlap with exemption 7(C).

enable the requester to retaliate, humiliate, or embarrass the FBI personnel who assisted in an investigation. *Id.* Furthermore, release of FBI personnel names or other identifying information may inhibit their ability to perform their duties for fear of threat or coercion. The remaining state and federal officials who have voluntarily assisted the FBI will clearly be reluctant to do so in the future should their identity be revealed. They too share the same potential for retaliatory actions. There is little need for the public to be able to identify these individuals, especially in this case, where the nature of the requested documents involves four murder convictions and the information the FBI has retained, not the individuals preparing the information.

■ Coleman asserts that individuals who have testified at trial have in some way surrendered their privacy interests. The court disagrees. Since the Supreme Court decision in *Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the law has been clear. Individuals involved in criminal investigations, whether as a witness or a suspect, maintain a strong personal privacy interest. *See Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990). An individual who testifies at trial does not waive this privacy interest beyond the scope of the trial record. *See Burge v. Eastburn,* 934 F.2d 577, 579 (5th Cir.1991). If the individuals actually involved in the criminal case have a strong interest in personal privacy, then it logically follows that individuals mentioned or identified as potential witnesses would be equally protected. *See Watson v. Department of Justice,* 799 F.Supp. 193 196 (D.D.C.1992). To hold otherwise would discourage essential witness testimony, insurmountably handicapping the criminal justice system.

The categorical withholding of any law enforcement records that identify third parties has been repeatedly upheld. *See, e.g., Safe-Card Services v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.1991); *Nation Magazine v. United States Customs Service,* 71 F.3d 885, 896 (D.C.Cir.1995). In this case the FBI withheld numerous documents in their entirety

pursuant to exemption 7(C). Many of these document withholdings were adequately justified within the deleted page sheets and supplemental deleted page sheets. Those documents that were not adequately described within the deleted page sheets so as to facilitate *de novo* review were submitted for *in camera* inspection. Upon inspection of the submitted documents, it is evident that release of any portion would reveal the identities of innocent third parties, witnesses or victims. Therefore, the FBI properly withheld those documents in their entirety to protect the privacy interests of third parties pursuant to exemption 7(C).

■ Additionally, the privacy interests of the victim's family in not disclosing photographs or records of the deceased victim outweighs; the public interest, if any, of disclosure. *See Hale v. Department of Justice,* 973 F.2d 894, 902 (10th Cir.1992), *vacated and remanded on other grounds,* 509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993); See also *Badhwar v. United States Department of the Air Force,* 829 F.2d 182, 186 (D.C.Cir.1987) (stating that surviving family members might be terribly distraught with the release of autopsy reports and denying disclosure under exemption 6).

■ Coleman argues that the individuals protected by exemption 7(C) have lost their privacy interest because their names or relevant information have been divulged in some public capacity. This argument lacks merit. If the information "were 'freely available,' then there would be no reason to invoke FOIA to obtain access to [it]." Reporters Comm. for Freedom of the Press, 489 U.S. at 764, 109 S.Ct. 1468.

Finally, plaintiff has failed to demonstrate any compelling public interest against which the court might balance the privacy interests of the individuals involved. Absent some demonstration of meritorious public interest supporting disclosure, a privacy invasion of this nature is unwarranted. See *King v. Department Justice,* 586 F.Supp. 286, 294 (D.D.C.1983), aff'd, 830 F.2d 210 (D.C.Cir. 1987). Therefore, the names and identities of the aforementioned groups of individuals were properly withheld by the FBI.

## D. Exemption 7(D)

The FBI contends that exemption 7(D) shields from disclosure several sources of information including source symbols and file numbers,[9] information provided by permanent symbol numbered informants, information provided by an expressly confidential source, information provided by an impliedly confidential source, information provided by a non-federal law enforcement agency, and information from state or local agencies.[10] Moran Dec. ¶¶ 93–109. 5 U.S.C. § 552(b)(7)(D), as amended by Pub.L. No. 99–570, § 1802 (1986) exempts:

> records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

■ Under exemption 7(D), informants' identities are protected whenever they have provided information either (1)under an express promise of confidentiality or (2)under circumstances from which such an assurance of confidentiality could be implied. *King*, 830 F.2d at 236. However, a presumption of confidentiality does not exist for all information received during an investigation.

Instead each situation must be determined through a case-by-case analysis. *Department of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

Express promises of confidentiality have been uniformly recognized as within the fold of exemption 7(D). *See, e.g., Simon v. Department of Justice*, 752 F.Supp. 14, 21 (D.D.C.1990) (proper to withhold if the source explicitly requested confidentiality), aff'd, 980 F.2d 782 (D.C.Cir.1992); *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C.Cir.1995) (finding information provided under express assurances of confidentiality to be exempt from disclosure). The difficulty arises in establishing who has received an express promise of confidentiality. In this case, records of exchanged promises exist but are limited [11], therefore the court's analysis must proceed to the implied assurance of confidentiality.

Implied confidentiality encompasses a large number of exemptions from disclosure asserted by the FBI including confidentiality for certain sources and communication with non-federal law enforcement. "Under exemption 7(D), the question is . . . whether the particular source spoke with an understanding that communication would remain confidential." *Landano*, 508 U.S. at 172, 113 S.Ct. 2014. This level of confidentiality is not absolute, but rather somewhat discretionary with regard to what the Bureau deems necessary for law enforcement. *Id.* at 174, 113 S.Ct. 2014.

■ In the instant case, the first issue of implied confidentiality that the court must address under exemption 7(D) is implied confidentiality as it relates to individual sources. Although a broad-based presumption of confidentiality is no longer afforded the FBI under this exemption, there are narrowly drawn instances in which the presumption may be appropriate. Where there is an ongoing relationship between an informant and the Bureau and their communication occurs

---

**9.** The source symbols and file numbers are discussed under exemption 2. *See Supra* II B. Since they are properly withheld under exemption 2, the court need not address whether they also qualify for exemption 7(D).

**10.** Information from state or local agencies consists primarily of either communication between non-federal law enforcement agencies and the FBI, which are directly addressed below and under exemption 7(C), or morgue reports, which are addressed independently under exemption 7(C) *See Supra* II C.

**11.** The FBI, as a matter of policy and practice, grants an express assurance of confidentiality to Potential Security Informants and Potential Criminal Informants in exchange for candid information. Olivarri Decl. ¶ 19. These ongoing relations with the FBI are also covered under *Landano* as discussed below. Additionally, the FBI maintains records of some informants' "express" status by following their names in the records with PROTECT, CONCEAL, ESTABLISHED SOURCE, etc. Id. These limited examples are definitively legitimate withholdings.

via secret rendezvous, it is reasonable to infer confidentiality. *Id.* at 179, 113 S.Ct. 2014. It is equally proper to consider the nature of the crime investigated and the witness' relation to such crime when determining implied confidentiality. *Id.* In this case, Coleman awaits four death sentences in Ohio pursuant to four murder convictions. Moran Dec. ¶¶ 34–48. Additionally, he has been convicted of numerous violent crimes including rape and kidnaping. *Id.* The "nature" of these crimes and the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass. *Landano*, 508 U.S. at 179, 113 S.Ct. 2014 (recognizing an implied assurance of confidentiality for witnesses to a gang related murder.) Violence of this nature engenders apprehension in the individuals who are willing to disclose information involving these crimes. It is clearly reasonable for these individuals to fear some form of retaliation should the government release their names or any information that might reveal their identity.

Coleman, however, argues that he has been sentenced to death "and will never see the light of day," thereby demonstrating his inability to retaliate and eviscerating the need for the exemption in this case. Opp. to Def.'s Mot. for Summ. J. at 11. The court disagrees. Retaliation can come in many different forms, including third party retaliation. As such, the slim likelihood of Coleman's freedom does not diminish the reasonable fears of individuals providing information for the FBI.

In addition, witnesses do not check their confidentiality at the courtroom door merely because they decided to aid federal law enforcement officials by testifying at a criminal trial as Coleman argues. *Davis v. Department of Justice*, 968 F.2d 1276, 1281 (D.C.Cir.1992). The fact that the information in dispute is now within the public domain does not diminish its confidentiality. *Lesar v. Department of Justice*, 636 F.2d 472, 491 (D.C.Cir.1980). Accordingly, the FBI properly withheld information pursuant to exemption 7(D) with regard to implied

expressions of confidentiality based on the nature of the investigation.

 The second issue of implied confidentiality that this court must address under exemption 7(D) is the FBI's assertion that communications between non-federal law enforcement and the FBI are exempt from disclosure as impliedly confidential. Just as clearly as the Supreme Court recognized the aforementioned narrow exception for presumption according to the nature of certain crimes, the Court disallowed that presumption for law enforcement. *Landano*, 508 U.S. at 176, 113 S.Ct. 2014. Without this restriction, non-federal law enforcement agencies could exchange varying degrees of information with the FBI under the "color" of confidentiality, while entirely ignoring the requirements imposed by FOIA.

However, many individuals in this case have disclosed, either under an express promise of confidentiality or under implied confidentiality, information to these non-federal law enforcement agencies who subsequently relayed the information to the FBI. Def.s' Mot. for Summ. J. at 16–17. For example, within the supplemental Deleted Page Sheets, Exhibit 4, Part 8: MW 7–897–1B2–103(B) states, "These deleted pages are also an enclosure to FD 340 envelope. These documents are a Waukegan, Illinois, Police Department report on the investigation and interview of a victim concerning rape in which the plaintiff was involved." It is reasonable to conclude that the nature of this crime and the victim's relation to it should equally protect her when she divulges information to state or local law enforcement officials that in turn communicate with the FBI. This communication is not a forfeiture of confidentiality, but rather a necessity in facilitating effective law enforcement. Naturally, the implication of confidentiality is rooted in the source's understanding that the communication would not be divulged *unless necessary for law enforcement purposes*. *See Landano*, 508 U.S. at 174, 113 S.Ct. 2014 (emphasis added). Therefore, information released to the FBI, which was gathered from confidential sources by state or local officials, maintains its confidential status to the extent it was initially implied and is

properly withheld pursuant to Exemption 7(D).

E. Exemption 7(E)

 The defendants exempted certain files including the behavioral science analysis of Coleman, the manner and use of investigative techniques, the numeric rating of investigative techniques, and materials relating to a polygraph examination based on 5 U.S.C. § 552(b)(7)(E). Moran Dec. ¶¶ 110–116; Olivarri Dec. ¶¶ 26–30. Section 552(b)(7)(E) provides exemption from disclosure for:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosures could reasonably be expected to risk circumvention of the law.[12]

Analysis of an exemption 7(E) claim is a two step process. Proper nondisclosure under this exemption requires first that the document be a record or information "compiled for law enforcement purposes," and second that release of the information "could reasonably be expected to risk circumvention of the law." *FBI v. Abramson*, 456 U.S. 615, 622, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982).[13] The threshold requirement of an Exemption 7 claim is that the defendant show a nexus between the agency's activities and a legitimate law enforcement purpose.

In this case, the defendant agency is the FBI, the nation's chief law enforcement agency. The documents which defendants withhold relate directly to the FBI's law enforcement duties. While the techniques themselves have already been identified by the FBI, the documents in question involve the manner and circumstances of the various techniques that are not generally known to the public. The records appear to be compiled for law enforcement purposes; therefore, the court now turns to the second part of the test set forth in *Abramson*.

The second part of the *Abramson* test requires the defendants to make a showing that disclosure will frustrate enforcement of the law. *Abramson*, 456 U.S. at 622, 102 S.Ct. 2054. The defendants offer highly credible justification for non-disclosure. Again, the identity of the investigative technique has been released and the manner and circumstances of the technique have been withheld. For example, "[t]he Behavioral Science Unit analyzes information to identify any common threads which might run through the various cases. Disclosure of this information performed by the Behavioral Science Unit could reduce or nullify their effectiveness if 'key' or 'certain patterns' of behavior of the individual being analyzed is released." Olivarri Dec. ¶ 26. This exposure of personality profiles could allow the criminal element to anticipate and avoid the investigative strategies used by the FBI. *See Code v. FBI*, No. 95–1892, 1997 WL 150070 (D.D.C. Mar.26, 1997). *See also* Moran Dec. ¶ 111. Further explanation of these techniques by the Bureau would effectively expose the core of information sought to be protected. *See* Coleman II. *See also Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir.1991).

Another poignant example is the use and rating of investigative techniques. FD–515 forms are maintained throughout an investigation, identifying and numerically rating the techniques used. Moran Dec. ¶ 115. Release of this information would allow the criminal element to pair techniques with their effectiveness, thereby affording them the opportunity to avoid the Bureau's most successful criminal strategies. *Delviscovo v. FBI*, 903 F.Supp. 1, 3 (D.D.C.1995) (proper to withhold accomplishment reports), *summary affirmance granted*, No. 95–5388 (D.C.Cir. Jan. 24, 1997).

---

**12.** 5 U.S.C. § 552(b)(7)(E) (1988). Exemption 7 was revised in 1986 to apply not only to investigatory records, but to all law enforcement information which, if released, would jeopardize the efficacy of law enforcement and increase the risk of circumvention of the law.

**13.** Although the court in *Abramson* construed the pre–1986 version of exemption 7, the broadening of the exemption in 1986 does not disturb the vitality of the *Abramson* framework. *See also, Keys v. Department of Justice*, 830 F.2d 337, 340 (D.C.Cir.1987).

Finally, the details of a polygraph examination involving Coleman cannot be released. The release of particular details with regard to an individual test could foreseeably circumvent the entire process. *See, e.g., Perrone v. FBI,* 908 F.Supp. 24, 28 (D.D.C.1995) (exposure of questions and their sequence would depreciate the effectiveness of the test). *See also Hale,* 973 F.2d at 902–03 (determining that disclosure of polygraph matters could lessen their effectiveness).

In sum, Coleman's challenge to defendants' decision to withhold the documents exempted under 7(E) must fail. Defendants have presented affidavits adequate to satisfy this court that the withheld information falls within the scope of exemption 7(E). The plaintiff has presented no information to controvert the government's affidavits or shown that the agency acted in bad faith. Upon applying this two part analysis to the documents at issue in this case, the court finds that the information was properly withheld by the FBI.

### F. Segregability

Finally, the plaintiff argues that the defendants did not adequately qualify withholding documents in their entirety. There is no evidence that the defendants improperly exempted entire documents. To the contrary, this court has ordered the defendants to submit hundreds of documents for *in camera* inspection and has painstakingly reviewed each one. *See Spirko v. United States Postal Service,* 147 F.3d 992 (D.C.Cir.1998). It is impossible to release any portion of the withheld documents without revealing the identity of protected individuals through the context in which they are mentioned or the circumstances under which they spoke. Defendants have correctly applied the exemptions with regard to the withheld information and provided an adequate explanation for those exemptions.

### III. Conclusion

For the reasons stated above, the defendants' motion for summary judgment is hereby GRANTED. A separate order shall issue this day.

*ORDER*

For the reasons set forth in the accompanying Memorandum opinion, defendants' Motion for Summary Judgment is GRANTED, and judgment is hereby entered for defendants.

This case now stands dismissed with PREJUDICE.

SO ORDERED.