**Thomas Edwin BLANTON, Jr., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 93–1789(PLF).**

United States District Court, District of Columbia.

Aug. 30, 1999.

James Hiram Lesar, Washington, DC, for Thomas Edwin Blanton, Jr.

Daniel Franklin Van Horn, U.S. Attorney's Office, Washington, DC, for U.S. Dept. of Justice.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case arises from a number of Freedom of Information Act requests made by Thomas Edwin Blanton, Jr. to the United States Department of Justice and the Federal Bureau of Investigation for records concerning himself and his father. The matter is before the Court on cross-motions for summary judgment and plaintiff's motion to compel a further search.

## I. BACKGROUND

Thomas Edwin Blanton, Jr., a resident of Birmingham, Alabama, was investigated in connection with the September 15, 1963 bombing of the Sixteenth Street Baptist Church in Birmingham that killed four young African American girls. On November 2, 1987, in an effort to "clear his name," Blanton sent a Freedom of Information Act request to the United States Department of Justice seeking documents that referred to him in connection with the bombing of the Church. Plaintiff's Complaint ("Pl.'s Compl.") ¶ 2.[1] He also sought

---

1. Specifically, Blanton requested:
 1. Any and all documents concerning me or in which I am referred which are found in the "Rowe Report" compiled by the Department of Justice of which said

 "Rowe Report" was the subject of *Playboy Enterprises, Inc. v. Department of Justice,* 677 F.2d 931 (D.C.Cir.1982);
 2. Any and all documents concerning me or in which I am referred relating to a

records with respect to his father. *See id.* His requests were received by the Department of Justice and referred to the Federal Bureau of Investigation. *See id.* ¶ 5 & Exh. 2. On January 26, 1989, Blanton made substantially similar requests to the Birmingham Field Office of the FBI. *See* Pl.'s Compl. ¶ 24 & Exh. 17.[2] On March 29, 1990, the FBI advised Blanton that it had reviewed 1,430 pages of documents; it released 329 pages to him and withheld the remainder, invoking various exemptions under the FOIA. *See id.* ¶ 16.[3] On July 23, 1990, the FBI released 255 additional pages out of 827 pages it had reviewed from the Birmingham Field Office. *See id.* ¶¶ 27, 31. It released an additional seventeen pages out of 176 pages reviewed on December 5, 1990, and an additional 135 pages out of 509 pages reviewed on February 1, 1991. *See id.* ¶¶ 33, 34.[4]

> polygraph test given to me by the Federal Bureau of Investigation in the Fall of 1963;
> 3. Any and all documents concerning me or in which I am referred relating to explosives found in the Birmingham, Alabama area and also all documents relating to bombing incidents in the Birmingham, Alabama area from August 1963 to November 1966;
> 4. Any and all documents concerning me or in which I am referred relating to FBI interviews with and statements made by two Birmingham women with the pseudonyms Dale Tarrant and Abingdon Spaulding concerning the bombing of the Sixteenth Street Baptist Church in Birmingham, Alabama in September of 1963;
> 5. The document or documents relating to me that have been removed and placed in the Special File Room of Records Branch, removed by 65 December 11, 1963, File number 89–1123 as per the sheet attached to this request;
> 6. The document or documents relating to me that have been removed and placed in the Special File Room of Records Branch, removed by 65 May 13, 1964, File number 157–1264 as per the sheet attached to this request.
> Pl.'s Compl. ¶ 4 & Exh. 1.

2. In his request to the Birmingham Field Office, Blanton did not request documents or information from the Special File Room. *See* Pl.'s Compl. ¶ 24 & Exh. 17.

## II. ADEQUACY OF THE SEARCHES

To obtain summary judgment, an agency must show "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover the relevant documents." *Weisberg v. U.S. Department of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983). It must establish through affidavits or declarations the adequacy of both its search methods (where and how it looked for responsive records) and the scope of its search (what it was looking for). *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir.1982). The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." *Moore v. Aspin*, 916 F.Supp. 32, 35

3. The documents the FBI has released concern both Blanton and his father. The FBI appears to have treated Blanton's requests for information concerning him and his father as a single request. Blanton has not objected to this administrative treatment of his requests. Indeed, in his cross-motion for summary judgment, he has himself grouped together arguments aimed at all four counts of his complaint, two of which relate to himself and two his father. The Court will address Blanton's claims in the same fashion.

4. Under the FOIA, "a plaintiff must exhaust his administrative remedies before filing a suit." *Muhammad v. United States Bureau of Prisons*, 789 F.Supp. 449, 450 (D.D.C.1992); *see also Oglesby v. U.S. Department of the Army*, 920 F.2d 57, 61–62 (D.C.Cir.1990); *Dettmann v. U.S. Department of Justice*, 802 F.2d 1472, 1476–77 (D.C.Cir.1986). In its December 10, 1993 motion for enlargement of time, the FBI argues that Blanton failed to exhaust his administrative remedies with regard to his claims concerning his father's information. *See* Def.'s Mot. Enlargement Time at 3–4. The FBI, however, did not seek to have Blanton's claims concerning his father dismissed. Furthermore, based on facts asserted in the FBI's motion for summary judgment and Blanton's cross-motion for summary judgment, it appears that the FBI has since administratively processed all of Blanton's requests and thus exhaustion of administrative remedies is no longer an issue before the Court.

(D.D.C.1996) (citing *Oglesby v. Department of the Army*, 920 F.2d at 68.) In attempting to demonstrate the adequacy of the search, the agency may rely upon "reasonably detailed, nonconclusory affidavits submitted in good faith," *see id.*, and "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d at 127.

In this case, the FBI has submitted a number of declarations of Robert A. Moran, a special agent with the FBI who is a supervisor in the FOIA Section at FBI Headquarters. *See* Moran Decl. IV ¶¶ 7–25; Moran Decl. V ¶¶ 4–10.[5] The declarations describe the FBI's search methods and the scope of the searches conducted in both its Washington, D.C. and Birmingham Field Offices. *See id.*

██ Blanton challenges the adequacy of the search on several grounds. Only two of his arguments, however, merit discussion. First, Blanton complains that the search was inadequate because the FBI failed to search relevant individual informant files. *See* Pl.'s Cross–Mot.Summ.J. at 12–14. The FBI responds that because Blanton's FOIA requests pertained only to documents and information about himself and his father the FBI was not obligated to search informant files in response to his request. *See* Def.'s Resp. Pl.'s Cross–Mot. Summ.J. at 2–3.

Blanton specifically requested information about himself that was obtained in "interviews with and statements made by ... Dale Tarrant and Abingdon Spaulding." Pl.'s Compl. ¶ 4 & Exh. 1. An obvious method for obtaining that information would be to search the informant files

of Tarrant and Spaulding. While the FBI says it had no obligation to conduct such a search and apparently did not do so, it asserts that any information that the Tarrant or Abingdon files might contain about Blanton would have been flagged by the "cross-reference" search performed using Blanton's name. *See* Def.'s Resp. Pl.'s Cross–Mot.Summ.J. at 3. This appears to be correct. As Special Agent Moran has explained:

A "main" index reference carries the name of an individual, organization, activity or the like, which is the *main* subject of a file maintained in the system. A 'cross-reference' index reference contains only a *mention* or *reference* to an individual or organization which is located in the body of a communication in a file concerning the investigation of another individual, organization or event.

The cross-references normally contain information duplicative of that found in the main file. By policy, the processing of a cross-reference is confined to the cover page and any other page containing the subject matter of the request or information relating to the subject matter. All other information is considered to be outside the scope (O/S) of the request, and is so noted in the margin. The O/S material contained on a pertinent page is reviewed for release determinations, and, as appropriate, exemption are noted for any deletions.

Moran Decl. IV ¶¶ 8–9 (emphasis in original). As Blanton points out, "[p]resumably, a search of the FBI's 'see' references should have picked up references to these materials," Pl.'s Cross–Mot.Summ.J. at 12, and Special Agent Moran declares that the FBI in fact did search "for all main and cross ('see') references to plaintiff." Moran Decl. V ¶ 4. Because the cross-reference

---

5. Declarations by Special Agent Moran were filed as exhibits to: (1) defendant's December 10, 1993 motion for enlargement of time ("Moran Decl. I"); (2) defendant's February 14, 1994 supplement to its motion for enlargement of time ("Moran Decl. II"); (3) defendant's August 24, 1995 status report ("Moran Decl. III"); (4) defendant's February 5, 1996 motion for summary judgment ("Moran Decl. IV"); (5) defendant's January 24, 1997 response to plaintiff's cross-motion for summary judgment ("Moran Decl. V").

checks would identify any records referring to Blanton in the informant files, the FBI was not required to go to informant files themselves and search further. *See* Def.'s Resp. Pl.'s Cross–Mot.Summ.J. at 3.

Second, Blanton contends that the search was inadequate because there were numerous "June Mail" pages in the documents released to him and that those documents were not provided to him. *See* Pl.'s Cross–Mot.Summ.J. at 11–12.[6] The FBI disputes this assertion and claims that all "June Mail" documents, with the exception of one that could not be located, were released to the plaintiff. *See* Moran Decl. V ¶¶ 5–6. Blanton makes no challenge to the integrity of Moran's declaration that the FBI has released to him all but this one "June Mail" document. Accordingly, this argument fails to create a genuine issue of material fact and judgment for defendant therefore is appropriate on the adequacy of search issue. *See Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984) (agency may demonstrate adequacy of search by submitting good faith, nonconclusory affidavits).

### III. DOCUMENTS WITHHELD PURSUANT TO VARIOUS FOIA EXEMPTIONS

 An agency may refuse to disclose documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b). The agency bears the burden of justifying the withholding and the district court reviews the agency claims of exemptions *de novo*. *See* § 552(a)(4)(B). *See U.S. Department of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). To enable the Court to determine whether the

documents are properly withheld, the agency must provide a detailed description of the withheld information through the submission of a so-called *Vaughn* Index, sufficiently detailed affidavits or declarations, or both. *See Oglesby v. U.S. Department of the Army*, 79 F.3d 1172, 1178 (D.C.Cir.1996).[7] Furthermore, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided … after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Kimberlin v. Department of Justice*, 139 F.3d 944, 949 (D.C.Cir.1998) (quoting *Mead Data Cent., Inc. v. U.S. Department of the Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977)). To withhold the entirety of a document, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible. *See Kimberlin v. Department of Justice*, 139 F.3d at 949–50.

The Court may award summary judgment to a government agency solely on the basis of information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen*, 484 F.2d at 826. An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspec-

---

**6.** If a page bearing the words "June Mail" appears in a file it means that the document or certain pages were removed and placed in a special file room used to house especially sensitive documents. *See* Moran Decl. V ¶ 5.

**7.** A *Vaughn* Index "must adequately describe each withheld document or deletion for a

released document" and "must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir.1979). *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C.Cir.1973).

tion requirements." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978) (internal citation and quotation omitted).

Pursuant to Judge Harold Greene's April 18, 1994 Order, the defendant in this case filed a *Vaughn* Index covering a representative sampling of approximately two hundred documents selected by the plaintiff. *See* Moran Decl. IV Exh. 2. "The purpose of a *Vaughn* Index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests … can generally prevail only by showing that the agency's *Vaughn* Index does not justify withholding information under the exemptions invoked." *Schiller v. NLRB,* 964 F.2d 1205, 1209 (D.C.Cir.1992) (citations omitted). A representative sampling is "an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. U.S. Department of State,* 928 F.2d 1148, 1151 (D.C.Cir.1991).[8] Having reviewed the *Vaughn* Index and the Moran Declarations, the Court will address each claimed exemption in turn.

## A. *Exemption 2—Internal Personnel Rules and Practices*

 Exemption 2 of the FOIA exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). To qualify for this exemption, the document must not only be internal, but must also relate to an existing agency rule or practice. *See Schwaner v. Department of the Air Force,* 898 F.2d 793, 794–98 (D.C.Cir.1990). To properly claim Exemption 2, the agency must show that (1) the material withheld falls within the terms of the statutory language and, if it does, that (2) "disclosure may risk circumvention of agency regulation," *Department*

of the Air Force v. Rose, 425 U.S. 352, 369, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), or that "the material relates to trivial administrative matters of no genuine public interest." *Founding Church of Scientology v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983).

 In this case, the FBI withheld three types of information under Exemption 2. First, it withheld information containing permanent source symbol numbers assigned to confidential sources that are used in FBI documents to conceal the identity of informants. *See* Moran Decl. IV ¶¶ 38–39. Second, it withheld confidential informant file numbers and/or temporary identifiers used in place of a permanent source symbol number. *See id.* ¶¶ 40–42. Finally, it withheld information about administrative practices and procedures pertaining to internal functions and policies of the FBI as they relate to the "use of specialized technical equipment," the release of which might provide the public "with insight into the internal handling" of investigations involving race crimes. *Id.* ¶ 43.

With regard to the permanent source symbol numbers and temporary source identifiers for confidential informants, the D.C. Circuit has held that "informant codes plainly fall within the ambit of Exemption 2." *Lesar v. U.S. Department of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980). "The means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest." *Id.* at 485–86. Similarly, the informant file numbers and documents pertaining to internal administrative practices and procedures for investigations involving race crimes are matters of internal significance and thus are also exempt from disclosure. The Court concludes that the FBI has properly invoked Exemption 2.

---

8. Blanton does not appear to challenge the adequacy of the *Vaughn* Index but does question the FBI's explanation for why it failed to include seven documents that he requested be included in the index. *See* Pl.'s Cross–Mot. Summ.J. at 15. The FBI maintains that the document originals were misplaced but that it "is continuing to search for them." Def.'s Resp. Pl.'s Cross–Mot.Summ.J. at 7; Moran Decl. V ¶ 8.

### B. Exemption 7—Records Compiled for Law Enforcement Purposes

■ Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" but only to the extent that one of the exemption's six subparts applies. *See* 5 U.S.C. § 552(b)(7). The threshold requirement for Exemption 7 is that the records at issue were "compiled for law enforcement purposes." A record is considered to have been compiled for law enforcement purposes. If "it was created or acquired in the course of an investigation 'related to the enforcement of federal laws' and 'the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C.Cir.1996) (quoting *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C.Cir.1982)). Law enforcement agencies such as the FBI face a lesser burden with regard to showing a legitimate law enforcement purpose behind the compilation of such records than do other agencies. *See id.*

■ Blanton asserts that the FBI has not established that the records at issue in this case were compiled for legitimate law enforcement purposes. *See* Pl.'s Cross–Mot.Summ.J. at 22–24. He claims that the records could have been created as part of the FBI's COINTELPRO operation and that the FBI must demonstrate that the records involved were in fact created in connection with the church bombing investigation or other investigation of him or his father related to the enforcement of federal laws. *See id.*[9] The argument is unpersuasive.

This case involves the FBI, an agency whose principal function is law enforcement. Thus, the defendant's burden is "less exacting" than if it was not a law enforcement agency. *See Quinon v. FBI*, 86 F.3d at 1228 (noting that after the

agency first demonstrates a legitimate basis for its investigation, the burden shifts to the party seeking the documents to "produce evidence that the asserted law enforcement rationale was merely pretextual"). It is clear from the entire record before the Court that the investigation of the bombing of the Sixteenth Street Baptist Church was "related to the enforcement of federal laws." *See* Moran Decl. IV ¶¶ 44–78 (discussing the bases for all of the FBI's asserted exemptions under 5 U.S.C. § 552(b)(7)). Blanton has put forth no persuasive evidence that any documents or information withheld pursuant to Exemption 7 were created in connection with COINTELPRO or that the defendant's asserted law enforcement purpose is pretextual.

#### 1. Exemption 7(C)—Unwarranted Invasion of Personal Privacy

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C). Pursuant to this exemption, the FBI has withheld from disclosure six types of information: (1) identities and/or identifiers of FBI employees; (2) names of and/or identifying information concerning third parties who are of investigative interest to the FBI; (3) names of and/or identifying information for third parties who furnished information to the FBI; (4) names of and/or identifying information concerning third parties merely mentioned; (5) names of and/or identifying information concerning employees of non-federal law enforcement agencies, and state or local bureau and/or agencies; and (6) names of and/or identifying information for employees of a commercial enterprise. *See* Moran Decl. IV ¶ 34. While Blanton

---

9. COINTELPRO is an acronym for the FBI's counterintelligence program. Pl.'s Cross-

Mot.Summ.J. at 2.

has asserted the general argument that the FBI has not conducted a proper balancing test for all of the information withheld under Exemption 7(C), he only has provided specific arguments challenging the withholding of the identities of certain informants and FBI agents.

To determine whether disclosure of certain information would constitute an unwarranted invasion of privacy, the Court must balance the public interest in disclosure against the privacy interest of the individual mentioned in the record. *See Beck v. Department of Justice*, 997 F.2d 1489, 1491 (D.C.Cir.1993); *Stern v. FBI*, 737 F.2d 84, 91 (D.C.Cir.1984); *Bast v. U.S. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981). Significantly, it is the "interest of the general public and not that of the private litigant" that the court considers in this analysis. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " *Davis v. U.S. Department of Justice*, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)) (internal quotations omitted).

The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for the purposes of Exemption 7(C). *Davis v. Department of Justice*, 968 F.2d at 1282. Even where government misconduct is alleged as the justification for disclosure, "the public interest is insubstantial unless the requester puts forward compelling evidence that the agency denying the FOIA request is engaged in illegal activity and that the information

sought is necessary in order to confirm or refute that evidence." *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d at 1205–06).

Blanton first asserts that the names of certain informants and FBI agents may not be withheld pursuant to Exemption 7(C) because those names and the fact of their involvement have already been disclosed to the public either through trial testimony, books or interviews. Pl.'s Cross–Mot.Summ.J. at 25–26. The D.C. Circuit has made quite clear, however, that a plaintiff who claims a right to information that is in the "public domain" must show "that there is a permanent public record of the exact [information] he wishes." *Davis v. Department of Justice*, 968 F.2d at 1280. Thus, in the instant case, Blanton must show that there is a permanent public record of an unredacted copy of a redacted document disclosed by the FBI. *Id.* Because Blanton has not sustained this burden, his argument fails and he is not entitled to the identities of agents and informants on these grounds.

Blanton next specifically challenges the withholding of the identities of FBI agents publicly disclosed in the Rowe Report. *See* Pl.'s Cross–Mot.Summ.J. at 28–29. He argues that the public has a legitimate interest in the unlawful activities of the FBI during COINTELPRO. The FBI claims that releasing the names of FBI agents constitutes an unwarranted invasion of privacy because it could compromise the safety of agents and subject them to retaliation and harassment by the former subjects of investigations. *See* Def.'s Mot.Summ.J. at 8–10; Moran Decl. IV ¶ 46. The FBI also notes that it disclosed the names of high-level FBI managers and only withheld the names of lower-level agents. *See* Moran Decl. IV ¶ 46.

The fact that the names of certain agents may have been disclosed publicly does not entitle Blanton to see where their names appear on documents responsive to his request. *See supra* at 45–46. Fur-

thermore, although Blanton asserts that numerous agent names were made public in the Rowe Report, when the FBI was ordered to disclose the Rowe Report in another FOIA case, the court allowed the FBI to redact the names of FBI agents. *See Playboy Enterprises, Inc. v. U.S. Department of Justice,* 516 F.Supp. 233 (D.D.C.1981), *aff'd in part and modified in part,* 677 F.2d 931 (D.C.Cir.1982). Blanton has produced no evidence, and the Court is not aware of any, that the Rowe Report in its entirety is publicly available. The fact that Blanton apparently has an unredacted copy of the Report in his possession has no bearing on the analysis in this case.

In addition, the Court concludes that the individual agents' personal privacy interests outweigh any public need to know their identities. The identities of the agents involved in COINTELPRO or in the investigation of Blanton in connection with the Sixteenth Street Baptist Church bombing are not "necessary in order to confirm or refute ... evidence that the agency is engaged in illegal activity." *SafeCard Servs., Inc. v. SEC,* 926 F.2d at 1206. Indeed, the deletion of the names of federal, state and local law enforcement personnel under similar circumstances has been routinely upheld. *See Lesar v. Department of Justice,* 636 F.2d at 487 (legitimate interest existed in preserving the identities of government officials where their disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Department of Justice,* 902 F.Supp. 1, 3 (D.D.C.1995), *aff'd in relevant part,* 1996 WL 734142 (D.C.Cir. Nov.20, 1996) (possibility of animosity toward FBI agents outweighed any possible benefit of disclosure). The Court therefore concludes that the names of FBI agents and other law enforcement officers were properly withheld pursuant to Exemption 7(C).

Blanton also challenges the FBI's withholding of the names of persons who provided information to the FBI. The FBI asserts that the disclosure of the identities of sources or informants could endanger the lives of those persons, or cause them embarrassment and humiliation. Moran Decl. IV ¶ 44. Blanton challenges this withholding on two grounds. First, he claims that many of the informants have lost their privacy interest because they are dead. *See* Pl.'s Cross–Mot.Summ.J. at 26. Second, he claims that the identities of some informants and the fact that they provided information to the FBI in connection with the church bombing and other events have been publicly disclosed. *See id.* at 25–26.

■ Blanton's first argument is unpersuasive. Sources who provide information to law enforcement face reputational harm if their identities are disclosed. *See Branch v. FBI,* 658 F.Supp. 204, 209 (D.D.C.1987). "Exemption 7(C) continues to protect sources mentioned in agency files who may be deceased." *Reiter v. DEA,* 1997 WL 470108 at *4 (D.D.C. Aug.13, 1997), *aff'd,* 1998 WL 202247 (D.C.Cir. Mar.3, 1998). Although it may be that the death of a source diminishes that person's privacy interest, "that privacy interest continues to be paramount, unless the requester demonstrates the existence of a public interest in disclosure." *Id.; cf. Swidler & Berlin v. United States,* 524 U.S. 399, 118 S.Ct. 2081, 2086, 141 L.Ed.2d 379 (1998) (holding that attorney-client privilege survives after the client's death, in part because "[p]osthumous disclosure of such [privileged] communications may be as feared as disclosure during the client's lifetime"). As noted above, the only relevant public interest in this analysis is the "extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties." *Bibles v. Oregon Natural Desert Ass'n,* 519 U.S. 355, 355, 117 S.Ct. 795, 795, 136 L.Ed.2d 825 (1997).

■ Blanton suggests that the public's interest in the disclosure of the identities of deceased sources is (1) to see that justice is done by plaintiff clearing his name,

and (2) to "maximiz[e] accurate and complete historicity [sic]." Pl.'s Cross–Mot. Summ.J. at 27. The latter interest, creating an accurate history of the events surrounding the church bombing, constitutes a public interest for the purpose of Exemption 7(C). Blanton has failed to persuade the Court, however, that disclosure of the identities of sources, deceased or living, will do anything to shed light on the FBI's performance of its statutory duties to enforce the law and properly investigate alleged crimes and, in turn, to create a more complete or accurate history of the events surrounding the Sixteenth Street Baptist Church bombing and investigation. Accordingly, the privacy interest of a source or informant, whether dead or alive, outweighs the asserted public interest in disclosure.

▮ Finally, Blanton contends that certain sources have lost or waived their privacy interest in nondisclosure because they have made public the fact of their status as informants. Specifically, he claims that the FBI may not redact the names of Gary Thomas Rowe and Elizabeth Cobbs because these two individuals have chosen to publicize the fact that they were FBI informants during the time the FBI was investigating the Church bombing.[10] The Court agrees. Because both Rowe and Cobbs have extensively publicized their status as informants during the Sixteenth Street Baptist Church bombing investigation, the Court finds no unwarranted invasion of their privacy by the disclosure of their identities to Blanton. *See Playboy Enters., Inc. v. Department of Justice,* 516 F.Supp. at 246 n. 12 (concluding that the disclosure of information about Rowe did not constitute an unwarranted invasion of privacy because of publicity surrounding his book and other

personal information).[11] Blanton's other arguments regarding certain sources who may have disclosed their identities at trial or otherwise are without merit.

Accordingly, plaintiff's motion with regard to the identities of and identifying information for Rowe and Cobbs is granted, and the FBI is directed to disclose this information to plaintiff for both Rowe and Cobbs in documents responsive to his FOIA request. All other information withheld by the FBI pursuant to Exemption 7(C) was properly withheld, and the plaintiff's motion as to that information is denied.

2. Exemption 7(D)—Confidential Sources

▮ Exemption 7(D) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Department of Justice v. Landano,* 508 U.S. 165, 179–81, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Pursuant to this exemption, the FBI has withheld: (1) informants' permanent source symbol numbers,

---

10. In her book, Cobbs revealed that she had a sex change operation and is now known as Petric Smith. *See* Petric Smith, Long Time Coming (1994). Because Smith was known as Elizabeth Cobbs during his time as an informant for the FBI, and for ease of identification, the Court will refer to him as Cobbs.

*See also* Gary Thomas Rowe, My Undercover Years with the Ku Klux Klan (1974).

11. The FBI also invoked Exemption 7(D) to withhold the identities of confidential sources. This exemption as it applies to Rowe and Cobbs is discussed *infra* at 49.

(2) informant file numbers and/or temporary identifiers, (3) information received from, and material that would tend to identify, a permanent source symbol, (4) names of identifying information for, and/or information provided by third parties under an implied promise of confidentiality, (5) identities and/or information provided by a non-federal law enforcement agency, or state or local bureau and/or agency, and (6) information supplied by commercial enterprises. *See* Moran Decl. IV ¶¶ 34, 56–75. Blanton challenges the withholding of information regarding certain informants.

In *Department of Justice v. Landano,* the Supreme Court held that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." 508 U.S. 165, 181, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Rather, "a source is confidential within the meaning of [Exemption] 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI,* 69 F.3d 1155, 1159 (D.C.Cir.1995) (citing *Department of Justice v. Landano,* 508 U.S. at 170–74, 113 S.Ct. 2014). Those circumstances include the source's relation to the crime and the character of the crime at issue. *See Department of Justice v. Landano,* 508 U.S. at 179, 113 S.Ct. 2014.

Under *Landano,* the relevant inquiry is "not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *Department of Justice v. Landano,* 508 U.S. at 172, 113 S.Ct. 2014 (emphasis in original). Where an agency relies on express assurances of confidentiality, the agency must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Department of Justice,* 164 F.3d 20, 34 (D.C.Cir.1998) (quoting *Davin v. U.S. Department of Justice,* 60 F.3d 1043, 1061 (3d Cir.1995)). "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.*

Blanton asserts that the FBI has not met its burden of justifying the continued confidentiality of certain sources under *Landano* and contends that certain sources no longer deserve confidential status. Specifically, plaintiff contends that two sources, Flora Chambliss and John Wesley Hall, no longer deserve confidential status because they are dead, and that the identities of two others, Gary Thomas Rowe and the Elizabeth Cobbs, cannot be withheld because they have waived their confidential status by writing books about their lives as informants or by giving interviews or appearing on talk shows. *See* Pl.'s Cross–Mot.Summ.J. at 26–27.

With the exceptions discussed below, the Court concludes that the FBI has met its burden with regard to establishing the confidential status of the sources whose names it withheld. Other than the names of or information supplied by sources under an implied promise of confidentiality, *see* Moran Decl. IV ¶¶ 70–71 (information from third party interviews was obtained under an implied promise of confidentiality), express guarantees of confidentiality are in some way attached to all of the information withheld and the *Landano* test therefore is satisfied.[12] Further-

---

12. *See* Moran Decl. IV ¶ 64 (express grant of confidentiality for informants' symbol numbers); *id.* ¶¶ 65–67 (same for informants' file numbers and temporary identifiers); *id.* ¶¶ 68–69 (information that would identify a permanent source symbol is under an express assurance of confidentiality); *id.* ¶¶ 73–74 (information from state and local investigative

more, the Court is satisfied that the nature of the crime investigated, the bombing of an African American church during a time of great unrest in the South, established an implied promise of confidentiality to those who assisted the FBI in its investigation of the crime.

■ As to Chambliss and Hall, the alleged fact of their deaths does not bear on whether they received assurances of confidentiality while they were alive and whether those assurances, if any, survive their deaths.[13] The inquiry under Exemption 7(D) is whether a source was given an express or implied assurance of confidentiality and the Court finds nothing in *Landano* or decisions of our court of appeals that suggests that a promise of confidentiality expires upon a person's death. *Cf. Schmerler v. FBI*, 900 F.2d 333, 336 (D.C.Cir.1990) ("[o]nce the government has demonstrated that the sources are confidential," it is not required "to justify the continued withholding against claims that the confidentiality is no longer warranted or that the public interest weighs in favor of disclosure").

Notwithstanding the foregoing, the Court concludes that both Rowe and Cobbs have waived any assurance of confidentiality, express or implied, by writing books about their experiences as confidential FBI informants during the time the FBI was investigating the Sixteenth Street Baptist Church bombing. *Cf. Playboy Enters., Inc. v. Department of Justice*, 516 F.Supp. at 246 n. 12 (concluding that Rowe had no privacy interest under Exemption 7(C) because he had published a book about his time as an informant).

### 3. Exemption 7(E)—Law Enforcement Techniques

Exemption 7(E) allows an agency to withhold "records or information compiled for law enforcement purposes ... that would disclose techniques and procedures for law enforcement investigations or prosecutions ... if such disclosures could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Pursuant to this exemption, the FBI withheld information relating to the use of certain investigative techniques and the questions asked and the responses provided during a polygraph examination given to Blanton. *See* Moran Decl. IV ¶¶ 77–78. Blanton challenges only the withholding of the polygraph information. *See* Pl.'s Cross–Mot.Summ.J. at 38–40.

■ To determine whether information is properly withheld under Exemption 7(E), the Court must find that: (1) the information was "compiled for law enforcement purposes," and (2) release of the information "could reasonably be expected to risk circumvention of the law." *FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); *see Coleman v. FBI*, 13 F.Supp.2d 75, 83 (D.D.C.1998). Exemption 7(E) applies only to "investigative techniques and procedures generally unknown to the public." *Malloy v. U.S. Department of Justice*, 457 F.Supp. 543, 545 (D.D.C.1978) (citing Joint Congressional Committee Report). Blanton asserts that the polygraph information was improperly withheld because polygraph techniques are generally known to the public. The Court disagrees.

■ The polygraph test is often depicted and discussed in television and movies. Books that claim to reveal its techniques and ways to beat the test are generally available. *See, e.g.,* JOHN E. REID & FRED INBAU, TRUTH AND DECEPTION: THE POLYGRAPH ("LIE DETECTOR") TECHNIQUE (1977). This general information, however, although widely available, "does not indicate the specific methods employed by the

---

agencies is obtained under an express assurance of confidentiality); *id.* ¶ 75 (information from commercial institutions is obtained under an express assurance of confidentiality).

**13.** The Court notes that Blanton has provided no proof of the death of either Hall or Chambliss.

FBI." Def.'s Resp. Pl.'s Cross–Mot. Summ.J. at 11. "While the techniques themselves have already been identified by the FBI, the documents in question involve the manner and circumstances of the various techniques that are not generally known to the public." *Coleman v. FBI*, 13 F.Supp.2d at 83. The Court also finds that the disclosure of polygraph information would frustrate enforcement of the law. *See FBI v. Abramson*, 456 U.S. at 622, 102 S.Ct. 2054; *Coleman v. FBI*, 13 F.Supp.2d at 84 ("the release of particular details with regard to an individual [polygraph] test could foreseeably circumvent the entire process"); *Perrone v. FBI*, 908 F.Supp. 24, 28 (D.D.C.1995) ("it is important to the effectiveness of a polygraph examination that the exact questions to be asked and their sequence not be known by the examinee"). Disclosing "the structure, pattern and sequence of questions, along with their varying degrees of intensity" would allow individuals to employ countermeasures and perhaps circumvent the test. Moran Decl. IV ¶ 78. Because the specifics of polygraph procedures and techniques are not generally known to the public and because their disclosure would frustrate law enforcement, the FBI is not required to release the questions asked of Blanton and his recorded physical responses during his polygraph examination.

## IV. CONCLUSION

The Court has reviewed the cross-motions of the parties, their memoranda of law, the declarations and the *Vaughn* Index submitted by the government, and the entire record herein. For the reasons discussed above, the Court will grant each motion in part and deny each motion in part.

An Order consistent with the foregoing Opinion will be issued this same day.

SO ORDERED.

## ORDER AND JUDGMENT

For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that plaintiff's motion to compel further search is DENIED; it is

FURTHER ORDERED that plaintiff's motion for summary judgment as to material withheld pursuant to Exemption 2 is DENIED; it is

FURTHER ORDERED that defendant's motion for summary judgment with regard to Exemption 2 is GRANTED; it is

FURTHER ORDERED that plaintiff's motion for summary judgment for material withheld pursuant to Exemption 7(C) is GRANTED as to the identities of Gary Thomas Rowe and Elizabeth Cobbs and is DENIED in all other respects; it is

FURTHER ORDERED that defendant's motion for summary judgment with regard to material withheld pursuant to Exemption 7(C) is DENIED as to the identities of and identifying information for Gary Thomas Rowe and Elizabeth Cobbs and is GRANTED in all other respects; it is

FURTHER ORDERED that plaintiff's motion for summary judgment with regard to material withheld pursuant to Exemption 7(D) is GRANTED as to the identities of and information provided by Gary Thomas Rowe and Elizabeth Cobbs and is DENIED in all other respects; it is

FURTHER ORDERED that defendant's motion for summary judgment with regard to material withheld pursuant to Exemption 7(D) is DENIED as to the identities of and information provided by Gary Thomas Rowe and Elizabeth Cobbs and is GRANTED in all other respects; it is

FURTHER ORDERED that plaintiff's motion for summary judgment as to polygraph information withheld pursuant to Exemption 7(E) is DENIED; it is

FURTHER ORDERED that defendant's motion for summary judgment as to polygraph information withheld pursuant to Exemption 7(E) is GRANTED.

FURTHER ORDERED that FINAL JUDGMENT is entered for plaintiff with regard to material withheld pursuant to Exemption 7(C) and Exemption 7(D) as to the identities of and information provided by Gary Thomas Rowe and Elizabeth Cobbs; it is

FURTHER ORDERED that FINAL JUDGMENT is entered for defendant with regard to all other matters; and it is

FURTHER ORDERED that this case is DISMISSED and the Clerk of the Court shall remove it from the docket of the Court. This is a final appealable order. *See* Rule 4(a), Fed.R.Civ.P.

SO ORDERED.