NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 16, 2009[*]
Decided April 17, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-3550

| | |
|---|---|
| LEE CATLEDGE, <br>     *Plaintiff-Appellant*, <br><br>     *v.* <br><br> ROBERT S. MUELLER, Director of the <br> Federal Bureau of Investigation, et al., <br>     *Defendants-Appellees*. | Appeal from the United States District <br> Court for the Northern District of Illinois, <br> Eastern Division. <br><br> No. 07 C 2116 <br><br> Ronald A. Guzmán, <br> *Judge*. |

**O R D E R**

Lee Catledge asked the FBI to produce National Security Letters (NSLs) issued during a certain time period, and the FBI gave him redacted versions. When Catledge clarified that he wanted to know which if any of them pertained to him, the FBI refused to

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

say.  Catledge sued the FBI and its director, Robert Mueller, as well as the Department of Justice and the Attorney General, seeking disclosure of this information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B).  The district court granted summary judgment to the defendants, finding the information exempt from disclosure, and Catledge appeals.  We affirm.

In April 2006 Catledge requested all NSLs issued under certain provisions of the USA Patriot Act.  Dissatisfied with his response from the FBI, Catledge filed a complaint in April 2007 seeking to compel production of the information he had requested.  After negotiating with the FBI, Catledge eventually narrowed his request to all NSLs issued between October 1, 2003, and December 31, 2004.  The FBI produced them but redacted the names.  Catledge then clarified that what he really wanted to know was which of the NSLs pertained to him.  The FBI responded that it could not confirm or deny whether Catledge was the subject of any NSLs, asserting that this information was protected from disclosure under FOIA Exemption 7(E), which protects against disclosure of law enforcement techniques, *see* 5 U.S.C. § 552(b)(7)(E).

The FBI moved for summary judgment, invoking Exemption 7(E) and other grounds and submitting a sworn declaration from David Hardy, Section Chief of the Record/Information Dissemination Section of the FBI.  Hardy explained that disclosing the subjects of NSLs would enable terrorist groups to vet their members and circumvent the law by shifting operations to those free of government suspicion.  He further noted that if the information was disclosed, these groups could analyze which of their members were investigated to learn when and how NSLs are issued and thus avoid raising suspicion in the future.  Catledge presented no evidence to rebut the FBI's declaration, nor has he asked for counsel to assist him.  The district court agreed that Exemption 7(E) applied and granted summary judgment to the defendants.  It explained that although the use of NSLs as a technique for law enforcement is public knowledge, the way they are used and their subjects are not.  It agreed, based on the undisputed record, that disclosing who was the subject of an NSL would enable groups employing those subjects to circumvent the law because those groups could learn how to avoid detection in the future.

The FBI has statutory authority to issue NSLs to obtain information relevant to counter-terrorism and counterintelligence investigations.  12 U.S.C. § 3414(a)(5)(A); 15 U.S.C. §§ 1681u(a)-u(b), 1681v(a); 18 U.S.C. § 2709(a)-(b).  To pursue those investigations, the FBI may use NSLs to collect information from NSL recipients, such as financial institutions, 12 U.S.C. § 3414(a)(5)(A), credit reporting companies, 15 U.S.C. §§ 1681u, 1681v, telephone companies, and internet service providers, 18 U.S.C. § 2709(b)(1).  It can also prohibit these recipients from disclosing the existence of an NSL (with some exceptions) if

the official who authorizes the letter certifies that disclosure of that NSL would endanger national security, endanger any person's life or physical safety, or interfere with certain types of investigations.  12 U.S.C. § 3414(a)(3)(A); 15 U.S.C. §§ 1681u(d)(1), 1681v(c)(1); 18 U.S.C. § 2709(c).

The FBI also has obligations under the Freedom of Information Act.  Under FOIA, federal agencies must disclose records upon request unless the records sought fall within an exemption.  *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004).  FOIA reflects a congressional balance between the public's right to information and the government's need to keep some information confidential.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although FOIA favors disclosure, its exceptions are meant to have "meaningful reach and application."  *John Doe Agency*, 493 U.S. at 152.  Furthermore, its purpose is to expose agency action to public scrutiny rather than to facilitate dissemination of information about specific people.  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).  Finally, because an agency generally cannot consider the requester's identity in determining whether to release information, any information subject to disclosure is available to anyone, even hostile foreign entities.  *Bassiouni v. CIA*, 392 F.3d 244, 245-46 (7th Cir. 2004) (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 771).

When reviewing FOIA cases resolved on summary judgment, we ask whether the district court had an adequate factual basis for the judgment and, if so, whether the grant of summary judgment was clearly erroneous.  *Enviro Tech Int'l*, 371 F.3d at 373-74; *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038 (7th Cir. 1998).  Although we have acknowledged the tension with our usual summary judgment standard of de novo review, which the government asserts is appropriate here, "[r]eview for clear error remains the norm for FOIA cases in this circuit."  *Enviro Tech Int'l*, 371 F.3d at 373-74; *see Solar Sources*, 142 F.3d at 1038 & n.5.

The FBI contends that Exemption 7(E) applies here.  Under that exemption government agencies may refuse to release "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Even if the existence of a law-enforcement technique is generally known, the exemption still protects the circumstances under which it is used, if they are not known.  *Hale v. DOJ*, 973 F.2d 894, 902-03 (10th Cir. 1992), *vacated on other grounds by* 509 U.S. 918 (1993); *see also Blanton v. DOJ*, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999), *aff'd*, 64 Fed. App'x 787, 789 (D.C. Cir. 2003) (unpublished).

Furthermore, we previously recognized that a government agency may properly refuse to confirm or deny whether it has any records responsive to a person's request for records about himself.[2] *Bassiouni*, 392 F.3d at 246-47. We noted in *Bassiouni* that even an index of such records could reveal who the agency is investigating and how the CIA deploys its resources, and thus risk circumvention of the law. *Id.* at 246-47; *see Morley v. CIA*, 508 F.3d 1108, 1128-29 (D.C. Cir. 2007) (finding self-evident that revealing specific information about CIA security clearance operations could compromise them and risk circumvention of law).

The district court's finding that the information Catledge sought was protected from disclosure under Exemption 7(E) had an adequate factual basis and was not clear error. The FBI uses NSLs as tools for investigating terrorism, so NSLs constitute "records . . . . compiled for law enforcement purposes," as Exemption 7(E) requires. Next, disclosing whether Catledge is a subject of the letters would reveal the circumstances under which the FBI has used this technique for law enforcement, a disclosure that Exemption 7(E) protects against. *See Hale*, 973 F.2d at 902-03. As the FBI's unrebutted declaration explains, disclosing the subjects of NSLs could enable others to commit terrorist crimes because terrorist organizations and other enemies could use FOIA responses to inspect their members and to shift their operations to those members not yet under government suspicion. Furthermore, by analyzing which of their members are investigated and which are not, terrorist organizations could learn when and how NSLs are issued and thus how to avoid detection in the future. *See id.*; *Bassiouni*, 392 F.3d at 246-47. Finally, the FBI could not achieve its aims by confirming only whom it is *not* investigating. Doing so would imply that in the absence of such a confirmation, others *are* being investigated. Catledge has offered no evidence to the contrary.

For these reasons, we AFFIRM the judgment of the district court.

---

[2] This type of response is commonly referred to as a "Glomar" response, after the Hughes Glomar Explorer, a ship secretly operated by the government and the subject of a FOIA request in *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). *Bassiouni*, 392 F.3d at 246.